840 F.2d 554
 5 UCC Rep.Serv.2d 1439
 In re Richard W. KELLEY, et al.
v.
FIRST WESTROADS BANK, et al. (District Court Nos. CV
82-0-544, 82-0-545, 82-0- 557, 82-0-679, 85-0-204).
Ronald K. PARSONAGE; Don Erftmier; Tony LaMalfa; Robert
F. Swartzbaugh; Gerald E. Palmer; Paul Alperson; John E.
Ryan; Thomas T. Bernstein; Albert Bloch; Mark Anthony;
Richard W. Kelley; Jack A. MacAllister; Bernard Magid and
Gary Gunderson, Appellants,
First Westroads Bank; Norwest Bank of Nebraska, N.A.
(formerly United States National Bank of Omaha and Bank of
Millard); Southwest Bank & Trust Company of Omaha;
American National Bank; FirstTier Bank, N.A. (formerly The
Omaha National Bank); First Westside Bank; and First
National Bank & Trust Company of Columbus, Appellants,
v.
The FEDERAL DEPOSIT INSURANCE CORPORATION, as Receiver of
the Penn Square Bank, N.A., Appellee.
In Re: Richard W. KELLEY, et al.
v.
FIRST WESTROADS BANK, et al. (District Court Nos. CV
82-0-544, 82-0-545, 82-0- 557, 82-0-679, 85-0-204)
Ronald K. Parsonage; Don Erftmier; Tony LaMalfa; Robert
F. Swartzbaugh; Gerald E. Palmer; Paul Alperson;
John E. Ryan; Thomas E. Bernstein;
Albert Bloch; Mark Anthony;
Richard W. Kelley, Appellee,
Jack A. MacAllister; Bernard Magid and Gary Gunderson,
First Westroads Bank; Norwest Bank of Nebraska, N.A.
(formerly United States National Bank of Omaha and Bank of
Millard); Southwest Bank & Trust Company of Omaha;
American National Bank; FirstTier Bank, N.A. (formerly The
Omaha National Bank); First Westside Bank; and First
National Bank & Trust Company of Columbus,
The Federal Deposit Insurance Corporation, as Receiver of
the Penn Square Bank, N.A., Appellant.
 Nos. 86-2443, 86-2574.
 United States Court of Appeals,
Eighth Circuit.
 Submitted Aug. 31, 1987.
Decided Feb. 9, 1988.
Rehearing Denied March 24, 1988.
 
 Thomas J. Dahlk, Omaha, Neb., for appellant.
 James J. Frost, Omaha, Neb., for appellee.
 Before LAY, Chief Judge; MAGILL, Circuit Judge; and LARSON, Senior District Judge.*
 MAGILL, Circuit Judge.
 
 
 1
 This appeal involves an interpretation of the law applied to commercial letters of credit in Nebraska. The issuers of several letters of credit (Issuing Banks) and their respective customers (Investors) appeal from a decision of the district court[1] holding that the Issuing Banks wrongfully dishonored drafts against various letters of credit presented by the Federal Deposit Insurance Corporation (FDIC), as receiver for the failed Penn Square Bank (Penn Square). This appeal consists of five separate actions which were consolidated for trial. They are the FDIC's cross-claims for wrongful dishonor, which were raised in the Investors' state court actions seeking temporary restraining orders (the TRO Actions),[2] and the FDIC's counterclaim in a state court action the Investors brought requesting, inter alia, rescission of the letters of credit (the Rescission Action).[3] On appeal, the Issuing Banks and the Investors argue (1) that compliance with the valid state court temporary restraining orders caused the dishonors, and that a court-induced dishonor cannot be wrongful as a matter of law; (2) that the drafts submitted against the letters of credit were nonconforming; (3) that the district court should have found that the letters of credit were unenforceable contracts under the securities laws of Nebraska; and (4) that the district court erred in ordering the payment of what appellants characterize as "prejudgment interest."
 
 
 2
 The FDIC has cross-appealed the district court's judgment in favor of the Investors on the FDIC's counterclaim. For the reasons discussed below we affirm the judgments of the district court.
 
 
 3
 I. BACKGROUND.
 
 
 4
 The Investors were all participants in various oil and gas drilling limited partnerships.[4] As part of the purchase agreement, the Investors were given the option of paying the full subscription price for their investment in cash or financing a substantial part of it by securing a standby letter of credit from a bank of their choice.
 
 
 5
 Each of the Investors elected to finance their investment using letters of credit. Accordingly, each caused an irrevocable letter of credit to be issued by his respective bank in favor of Penn Square in an amount equal to the unpaid subscription price. Penn Square accepted the letters of credit as collateral for loans it made to each limited partnership.
 
 
 6
 On July 5, 1982, the Comptroller of the Currency declared Penn Square insolvent and appointed the FDIC as receiver. In this capacity, the FDIC began to draft against the letters of credit as the limited partnerships defaulted on their Penn Square loans.
 
 
 7
 Upon the Issuing Banks' receipt of the FDIC's drafts, the Investors filed lawsuits in Nebraska state court seeking injunctive relief. The Investors, in an effort to avoid funding of the drafts,[5] sought orders prohibiting the Issuing Banks from honoring the drafts. The Nebraska courts entered ex parte temporary restraining orders which prohibited the Issuing Banks from "honoring, paying, processing or otherwise acting upon said letters of credit." After entry of the temporary restraining orders, the Issuing Banks notified the FDIC in writing of the existence of the legal restraint. At no time did the Issuing Banks advise the FDIC that any of the drafts were nonconforming or otherwise defective. The Nebraska courts also established hearing dates on the Investors' request for temporary injunctions. Prior to the hearings, the FDIC intervened and removed the actions to federal court, pursuant to 12 U.S.C. Sec. 1819. Subsequent to removal, the Investors failed to pursue their request for preliminary injunctive relief with the federal court.
 
 
 8
 Contemporaneous with the filing of the TRO Actions, the Investors filed the Rescission Action in Nebraska state court, claiming that the sales of the limited partnership units were in violation of the registration requirements of the Nebraska securities laws. The Investors sought rescission of the contracts for purchase of the limited partnership units and the return of all the consideration paid, including both cash payments and the letters of credit. The FDIC intervened in this action as well, and removed it to federal court. There were no claims asserted against the FDIC in any of these suits.
 
 
 9
 The FDIC filed cross-claims against the Issuing Banks for wrongful dishonor in the TRO Actions and a counterclaim against some of the Investors in the Rescission Action. The counterclaim sought a judgment against certain of the Investors based on their Assumption Agreements.[6] As discussed in footnotes 2 and 3, supra, the Investors dismissed their petitions in the TRO Actions and settled their complaint in the Rescission Action. Thus, only the FDIC's cross-claims for wrongful dishonor in the TRO Actions and counterclaim based on the Assumption Agreements in the Rescission Action remained to be decided at trial. Prior to trial, the Issuing Banks tendered the defense of the wrongful dishonor cross-claims to the Investors.
 
 
 10
 The district court held, inter alia, that (1) the drafts submitted by the FDIC conformed to the requirements in the letters of credit; (2) upon the expiration of the temporary restraining orders issued by the Nebraska courts, the Issuing Banks had an obligation to honor these conforming drafts; (3) the failure to honor these drafts was a wrongful dishonor, and (4) the FDIC was entitled to interest as an element of damages under Neb.Rev.Stat.U.C.C. Sec. 5-115.
 
 
 11
 The district court did not reach the issue of whether the alleged security violations would have any effect on the Issuing Banks' obligations to honor the letters of credit, finding that the issue was mooted by the Investors' dismissal of the Rescission Action and by the fact that the Investors chose to retain their interests in the limited partnerships.
 
 
 12
 The district court also entered judgment in favor of the Investors on the FDIC's counterclaim based on the Assumption Agreements, holding that because the FDIC was entitled to collect on the letters of credit pursuant to the court's order, the FDIC could not also recover from the Investors. This appeal and cross-appeal followed.
 
 
 13
 II. MOTION TO DISMISS.
 
 
 14
 On December 3, 1986, the FDIC moved to dismiss the Rescission Action (CV 85-0-204) from this appeal for lack of jurisdiction. On January 21, 1987, this court ordered that the motion to dismiss would be considered by the panel of judges to whom the case was referred for review on the merits. In support of its motion, the FDIC argues that all of the claims asserted by the Investors were dismissed prior to trial, and therefore no judgment adverse to the appellants was rendered by the district court. Thus, the FDIC argues, there is no claim upon which appellants may base an appeal or invoke the jurisdiction of this court. We agree. Accordingly, the FDIC's motion to dismiss appellants' Rescission Action for lack of jurisdiction is hereby granted. Since all of appellants' contentions regarding violations of the Nebraska securities laws were contained in the dismissed action, we do not address them in this opinion.
 
 
 15
 III. DISCUSSION.
 
 
 16
 Historically, the function of a letter of credit was to assure payment of an obligation by substituting a bank's acceptable credit for that of the original obligor. See generally, Joseph, Letters of Credit: The Developing Concepts and Financing Functions, 94 Banking L.J. 816 (1977).
 
 
 17
 More recently, a variation of the typical letter of credit, the standby letter of credit, has become popular in a variety of commercial transactions.
 
 
 18
 [T]he [standby letter of credit] device functions not as a medium of payment for property sold, services rendered, or the like, but rather as a "back up" against customer default on financial or other obligations. Such letters function somewhat like guaranties, for it is customer default that triggers issuer's obligation.
 
 
 19
 J. White & R. Summers, Handbook of the Law Under the Uniform Commercial Code Sec. 18-1 (2d ed. 1980). (Emphasis in original.)
 
 
 20
 In Nebraska, letters of credit are primarily governed by the Uniform Commercial Code. Brown v. United States National Bank of Omaha, 220 Neb. 684, 371 N.W.2d 692, 698 (1985); Neb.Rev.Stat.U.C.C. Secs. 5-101 to 5-117. A letter of credit is an agreement by a bank, at its customer's request, to honor drafts for payment to a beneficiary upon compliance with the conditions specified in the letter of credit. See Neb.Rev.Stat.U.C.C. Sec. 5-103(1)(a).
 
 
 21
 An issuer must honor a draft or demand for payment which complies with the terms of the relevant letter of credit. Neb.Rev.Stat.U.C.C. Sec. 5-114(1).
 
 
 22
 The time limitation on the bank's duty to honor is set out in Neb.Rev.Stat.U.C.C. Sec. 5-112(1), which provides as follows:
 
 
 23
 (1) A bank to which a documentary draft or demand for payment is presented under a credit may without dishonor of the draft, demand or credit
 
 
 24
 (a) defer honor until the close of the third banking day following receipt of the documents; and
 
 
 25
 (b) further defer honor if the presenter has expressly or impliedly consented thereto.
 
 
 26
 Failure to honor within the time here specified constitutes dishonor of the draft or demand and of the credit.
 
 
 27
 Thus, once the FDIC submitted drafts to the Issuing Banks, the Issuing Banks had three days, in the absence of the FDIC's express or implied consent for an extension, to honor or reject the drafts.
 
 
 28
 The Issuing Banks contend that the issuance of the temporary restraining orders by the Nebraska state courts, with their directives not to process or pay, precluded them from honoring the drafts within three days as required by the statute. They argue that the temporary restraining orders caused some sort of "statutory dishonor," and that such a court-induced dishonor could not, as a matter of law, be wrongful. This claim was also asserted before the district court, which noted: "The Banks, have not, however, provided the Court with case law or other authority for such an interpretation of the happening." Memorandum and Order at 38. Appellants have likewise failed to provide such authority to this court.
 
 
 29
 We cannot agree with appellants' interpretation of the law, in light of the fact that the well-established function of a temporary restraining order is to maintain the status quo. See Diversified Mortgage Investors v. United States Life Title Insurance Co., 544 F.2d 571, 576 (2d Cir.1976); Federal Leasing, Inc. v. Underwriters at Lloyd's, 487 F.Supp. 1248, 1259 (D.Md.1980), aff'd, 650 F.2d 495 (4th Cir.1981). When the Investors procured the temporary restraining orders, see Neb.Rev.Stat.U.C.C. Sec. 5-114(2)(b), the status quo was that the FDIC had made a timely presentment of the drafts. The imposition of the temporary restraining orders merely suspended the Issuing Banks' obligation to honor or dishonor the drafts during the pendency of the legal restraint.
 
 
 30
 The legal restraint automatically terminated ten days after the cases were removed to federal court. Granny Goose Foods, Inc. v. Brotherhood of Teamsters and Auto Truck Drivers, 415 U.S. 423, 433, 94 S.Ct. 1113, 1121, 39 L.Ed.2d 435 (1974). When the temporary restraining orders expired, the Issuing Banks were under an obligation to process the letters of credit; they had the option, of course, to honor the drafts or to reject them if they determined them to be nonconforming. Failure to honor or properly dishonor the drafts during the pertinent period[7] constituted a wrongful dishonor. Neb.Rev.Stat.U.C.C. Secs. 5-109, 5-112, 5-114.
 
 
 31
 The Issuing Banks claim that no dishonor could have occurred at the expiration of the temporary restraining orders because at that time they had no documents to dishonor. They claim that the evidence at trial indicated that the drafting documents were returned. Even accepting the Issuing Banks' assertion that the drafting documents were not in their possession, they were still obligated to process the drafts because their obligation to pay was fixed at the time the documents were presented. The fact that the documents were returned has no legal effect in this case because the status quo when the temporary restraining orders issued was that the drafting documents had been timely presented. See Diversified Mortgage Investors, 544 F.2d at 575-76. The FDIC had no obligation to again present the drafts to the Issuing Banks after the expiration of the temporary restraining orders.
 
 
 32
 The Issuing Banks next claim that the FDIC's drafts did not conform to the precise terms of the letters of credit and that consequently the obligation to pay was never fixed. Specifically, they argue (1) that the requirement that the drafts be "accompanied by obligation to [the particular Eagle Partnership] arising out of [the investor's] subscription to the partnership,"[8] could not be met because there was no enforceable underlying obligation, due to various violations of the Nebraska securities laws, and (2) that the drafts were signed by an assistant liquidator of the FDIC, instead of "an officer of the Penn Square Bank" as required by the letters of credit.
 
 
 33
 With respect to the Issuing Banks' first contention, after carefully reviewing the record, we agree with the district court that the FDIC satisfied this condition by attaching evidence of the underlying obligation. In this case the FDIC "attached a true copy of the participant subscription page for the limited partnerships signed by the plaintiffs." Mem.Op. at 33. We hold that this condition was documentary in nature, and was satisfied by the FDIC's submission of adequate documentation confirming the underlying obligation.
 
 
 34
 Appellants' second contention is equally unpersuasive. The FDIC clearly had the authority to draft against the letters of credit. "With respect to any such closed bank, the [FDIC] as such receiver shall have all the rights, powers, and privileges now possessed by * * * law to a receiver of a national bank * * *." 12 U.S.C. Sec. 1821(d). In short, the FDIC stands in the position of the insolvent bank. See FDIC v. Hatmaker, 756 F.2d 34 (6th Cir.1985). The district court found that:
 
 
 35
 With regard to the letters of credit that required a signed statement by an officer of the Penn Square Bank, three of the drafting letters stated, "[P]lease accept this as our signed statement by an officer of the Penn Square Bank * * *." One of the letters, stated only, "Please accept this as our signed statement * * *." The drafting letters were made on FDIC letterhead, and signed by Gregory P. Murphy, Assistant Liquidator. The sight drafts were made payable to the "Federal Deposit Insurance Corporation Receiver of Penn Square Bank, N.A., Oklahoma City, Oklahoma" and signed by Gregory P. Murphy, Assistant Liquidator. * * * [O]n the two sight drafts that required a signature of an officer of the Penn Square Bank, Gregory P. Murphy, signed as "Assistant Liquidator Penn Square Bank, N.A., In Receivership, FDIC."
 
 
 36
 Mem.Op. at 33.
 
 
 37
 In Nebraska, when construing the provisions regarding documentation for a letter of credit, the courts "will not demand literal adherence to requirements dictated by the parties at the risk of frustrating the objectives of the Uniform Commercial Code." Brown v. United States National Bank of Omaha, 220 Neb. 684, 371 N.W.2d 692, 701 (1985). Here, there is no way that the Issuing Banks could have been misled by the FDIC's wording of its demand for payment. See id., citing Flagship Cruises, Ltd. v. New England Merchants, 569 F.2d 699 (1st Cir.1978) (variance in documentation is not fatal if there is no possibility that documents tendered could mislead a paying bank to its detriment). Thus, the FDIC's drafts were conforming,[9] and failure to honor them constituted wrongful dishonor.
 
 
 38
 Finally, the Issuing Banks argue that no interest should be awarded to the FDIC on the face amount of the wrongfully dishonored letters of credit. They contend that "prejudgment interest," as they characterize it, may only be awarded on liquidated claims. These claims were unliquidated, they assert, because there was a legitimate dispute involved regarding the validity of the letters of credit in this case. The FDIC contends that this interest is not prejudgment interest, but rather interest as an element of damages under Neb.Rev.Stat.U.C.C. Sec. 5-115. We agree with the FDIC. Section 5-115 provides that the party whose drafting documents were wrongfully dishonored may recover from the issuer "the face amount of the draft or demand together with incidental damages * * * and interest " (emphasis added). The FDIC is entitled to interest on the face amount of the draft, commencing from the date of dishonor.
 
 
 39
 Because the FDIC is entitled to recover from the Issuing Banks for the wrongful dishonor of the letters of credit, it is not permitted to recover against the individual Investors on the Assumption Agreements.
 
 
 40
 We have reviewed appellants' other contentions and find them to be without merit. Accordingly, the judgments of the district court are affirmed in all respects.
 
 
 
 *
 The HONORABLE EARL R. LARSON, Senior United States District Judge for the District of Minnesota, sitting by designation
 
 
 [1]
 The Honorable C. Arlen Beam, United States Circuit Judge (at the time of this case, Judge Beam was Chief Judge, United States District Court for the District of Nebraska)
 
 
 [2]
 The Investors originally brought these TRO actions as uncontested proceedings against their own banks seeking to enjoin payment of certain letters of credit issued at their request by the Issuing Banks in favor of Penn Square Bank. The Investors ultimately dismissed their petitions in these cases (CV 82-0-544, CV 82-0-545, CV 82-0-557, CV 82-0-679)
 
 
 [3]
 The Investors brought the Rescission Action (CV 85-0-204) against various Oklahoma limited partnerships. The Investors' complaint was settled and dismissed with prejudice on the eve of trial
 
 
 [4]
 Investors in CV 82-0-544 are purchasers of limited partnership units in Eagle Petroleum Program 1980. Investors in CV 82-0-545 and CV 82-0-679 are purchasers of K-E Drilling Partnership units. Investors in CV 82-0-557 are purchasers of Red Fork Drilling Partnership 1980, Ltd. units
 
 
 [5]
 The Investors are ultimately responsible for indemnifying the Issuing Banks for any amounts properly paid under the letters of credit. See Neb.Rev.Stat.U.C.C. 5-114(3)
 
 
 [6]
 The Investors that executed the Assumption Agreements personally agreed to assume their proportionate share of the indebtedness of the limited partnership in which they had invested. Liability under the agreements was expressly conditioned upon non-payment of the letters of credit by the Issuing Bank
 
 
 [7]
 The Issuing Banks had whatever portion of the three-day limitation period, set out in Neb.Rev.Stat.U.C.C. Sec. 5-112(1), that remained at the time the temporary restraining orders were issued
 
 
 [8]
 Some of the letters contained a slight variation of this language, a variation which does not affect our analysis
 
 
 [9]
 It is noteworthy that the Issuing Banks never indicated to the FDIC that its drafts were nonconforming. As the district court noted, the only reason given to the FDIC for not honoring the drafts was the issuance of the temporary restraining orders. Mem.Op. at 33