## SHAANXI JINSHAN TCI ELECTRONICS CORPORATION *vs.* FLEETBOSTON FINANCIAL CORPORATION & another.[1]

No. 02-P-723.

Suffolk. November 7, 2003. - April 28, 2004.

Present: LENK, GRASSO, & COWIN, JJ.

*Injunction. Uniform Commercial Code,* Letter of credit, Dishonor. *Limitations, Statute of. Laches. Practice, Civil,* Summary judgment. *Contract,* Misrepresentation. *Consumer Protection Act,* Unfair or deceptive act.

A Superior Court judge properly entered summary judgment in favor of the plaintiff on its claim for wrongful dishonor of a letter of credit, where the plaintiff's presentation of the letter of credit was not void or otherwise affected as a result of the issuance of a temporary restraining order against the plaintiff that enjoined it from applying for payment under the line of credit, given that at the time the plaintiff made its presentation, it had no notice of the restraining order, which was issued in a civil action in which the plaintiff had not yet been served [44-45]; and where, under the unusual circumstances that existed, it was incumbent upon the bank to which the plaintiff had made its valid presentation (a predecessor in interest to one of the defendants) to inform itself of the status of the injunction against payment of that letter of credit, so that, upon the injunction's dissolution, the bank could make the payment it had promised [45-47]; moreover, the judge properly concluded that the plaintiff failed to present evidence sufficient to prevent summary judgment in favor of the defendants on the plaintiff's claims for misrepresentation and violation of G. L. c. 93A [48-49].

CIVIL ACTION commenced in the Superior Court Department on February 6, 2001.

The case was heard by *Allan van Gestel,* J., on motions for summary judgment.

*Charles P. Kindregan* (*Melvin S. Hoffman* with him) for the plaintiff.

---

[1]Fleet National Bank, a wholly owned subsidiary of FleetBoston Financial Corporation. Additional parties defendant in the Superior Court proceeding included TCI Corporation, I-See-You Corporation, Franklin D. Hwang, and Ching Ching Huang; judgment entered against them. They are not parties to the present appeal.

*Timothy M. Hughes* for the defendants.

Cowin, J. We address cross appeals arising from the refusal of BayBank, N.A. (BayBank), the predecessor in interest of Fleet National Bank,[2] to make payment on a standby letter of credit. A judge of the Superior Court granted summary judgment in favor of the plaintiff, Shaanxi Jinshan TCI Electronics Corporation (Shaanxi), for wrongful dishonor of the letter of credit. At the same time, he granted summary judgment for the defendants on Shaanxi's claims of misrepresentation and violation of G. L. c. 93A, § 11. These cross appeals followed. The defendants contend principally that the absence of a proper presentation by Shaanxi, particularly in light of a temporary restraining order, released them from liability for nonpayment of the letter of credit. On its part, Shaanxi asserts that the evidence of misrepresentation and deceptive trade practices by BayBank was sufficient to preclude summary judgment on those claims. We affirm the judgment.

1. *Background.* The underlying facts are, in large part, not disputed. In February, 1996, Shaanxi, a Chinese corporation, entered into a contract with TCI Corporation (TCI), a Massachusetts corporation, whereby TCI obligated itself to deliver to Shaanxi a large quantity of videophones. The contract required that TCI obtain a standby letter of credit in favor of Shaanxi to protect the latter in the event of a breach by TCI. Accordingly, TCI applied for and received from BayBank a letter of credit in the amount of $300,000 with an expiration date of October 31, 1996.

Asserting that TCI was in breach,[3] Shaanxi presented documents to BayBank to obtain payment of the letter of credit. On October 11, 1996, BayBank notified Shaanxi that the documents contained certain discrepancies, and that it therefore would not make payment. On October 15, 1996, TCI commenced an action in the Superior Court against Shaanxi and BayBank, and,

[2] We refer throughout this opinion to BayBank because it was that corporation's actions that are involved in the dispute. It is uncontroverted that Fleet National Bank has acquired whatever liability to the plaintiff that may arise as a result of this decision.

[3] Shaanxi's claim that TCI breached the contract was subsequently upheld in arbitration.

on that date, obtained ex parte a temporary restraining order, returnable October 23, 1996, enjoining Shaanxi from claiming, and BayBank from paying, any amounts pursuant to the letter of credit. On October 21, 1996, copies of the summons, verified complaint, and temporary restraining order were served on the Secretary of the Commonwealth as agent of Shaanxi for service of process. On October 24, 1996, the Secretary forwarded copies to Shaanxi.

By documents dated October 18, 1996, Shaanxi made a second presentation to BayBank to obtain payment on the letter of credit. This was received by BayBank on October 24, 1996. Accordingly, both Shaanxi's presentation and BayBank's receipt took place prior to actual notice to Shaanxi of the temporary restraining order. On October 28, 1996, BayBank responded by telex that it had in fact received the presentation documents, but that payment would not be made because "we have received a restraining order of the courts herein prohibiting us to effect payment under this Letter of Credit."[4]

On October 28, 1996, TCI obtained a preliminary injunction that in essence continued the temporary restraining order.[5] Entitled "Temporary Injunction Order," it was sent to BayBank by TCI's counsel on November 13, 1996. In a cover communication, TCI's counsel informed BayBank that "[d]espite the heading (Temporary Injunction Order) it is a permanent injunction unless otherwise ordered by the Court." On November 19, 1996, BayBank forwarded to Shaanxi a telex referring to the bank's receipt of a copy of a "permanent injunction" that prohibited payment pursuant to the letter of credit. This was followed by a telex dated February 3, 1997, from BayBank to Shaanxi reporting that the bank had to that date not been advised that the injunction had been dissolved; it had

[4]Shaanxi suggests that the statement was inaccurate because, by October 28, 1996, the temporary restraining order had expired and notice of a subsequent preliminary injunction had not been received by BayBank.

[5]We note that the temporary restraining order expired on October 25, 1996, at the latest, see Mass.R.Civ.P. 65(a), 365 Mass. 832 (1974), and that the preliminary injunction did not issue until October 28, 1996. Accordingly, there was a window of at least three days during which BayBank was under no restraint and could have made payment upon Shaanxi's second presentation received by BayBank on October 24, 1996. For the reasons stated, our decision does not turn on this fortuity.

received no instructions from its customer TCI; and it would advise accordingly should it receive further information from the courts or TCI. BayBank also indicated that it would return the presentation documents on February 14, 1997, unless it heard from Shaanxi prior to that date regarding their disposition. Another telex from the bank on February 5, 1997, stated, in part: "Unless the courts advise us that the permanent restraining order has been lifted and we are then advised by the applicant to effect payment, payment cannot be effected."

On February 26, 1997, TCI's action against Shaanxi and BayBank was dismissed pursuant to St. 1996, c. 358, § 5, for failure of TCI to show a reasonable likelihood that it would recover in excess of $25,000 in the proceeding. This had the effect of dissolving the preliminary injunction that had barred payment on the letter of credit. No action was taken by any party for approximately three years. In the interim, Shaanxi prevailed in an arbitration against TCI regarding breach of the underlying agreement and learned that TCI's action had been dismissed and the preliminary injunction dissolved. On February 28, 2000, Shaanxi unsuccessfully sought payment from Bank Boston (successor to BayBank and predecessor of the present defendants).

2. *Wrongful dishonor of letter of credit.* With respect to Shaanxi's first presentation, BayBank notified Shaanxi on October 11, 1996, that discrepancies existed. Neither the timeliness nor the accuracy of this notice is disputed by Shaanxi. Shaanxi subsequently made a second presentation dated October 18, 1996, which was received by BayBank on October 24, 1996. The defendant asserts that, because Shaanxi was, on October 18, 1996, subject to a temporary restraining order that enjoined it from applying for payment under the letter of credit, its second presentation was void and imposed no obligations on BayBank prior to the expiration of the letter of credit on October 31, 1996.

We agree with the motion judge that Shaanxi could not be bound by a restraining order of which it had no notice in a civil action in which it had not yet been served. The order, obtained ex parte, was not served on the Secretary of the Commonwealth until October 21, 1996; the verified complaint was served at the

same time. It is a "prerequisite for binding a person to an injunction . . . that the person must have notice of the order." 11A Wright, Miller & Kane, Federal Practice & Procedure § 2956, at 337 (2d ed. 1995). Parties are entitled to notice of proceedings wherein their interests are to be adjudicated. See *Morehardt* v. *Dearborn*, 313 Mass. 40, 45 (1943). Contrast *Ruml* v. *Ruml*, 50 Mass. App. Ct. 500, 506-507 (2000). We reject the defendant's argument that the temporary restraining order was akin to the automatic stay in bankruptcy proceedings, a statutory creation that relaxes notice requirements in the service of certain policy objectives while replacing those requirements with other forms of protection. We conclude that Shaanxi's second presentation was not void, or otherwise affected, as a result of the restraint of October 15, 1996.

We note in addition that BayBank never expressed to Shaanxi that a reason for withholding payment was that the presentation itself was void. While failure to make such a statement would not affect a presentation that actually was void, we conclude that Shaanxi, not bound by a restraining order of which it had no notice, made a valid presentation that was received by Bay-Bank on October 24, 1996. It was incumbent on BayBank either to honor the demand for payment or state reasons why it would not do so. Under the provisions of the Uniform Commercial Code as in effect at the time of this 1996 transaction,[6] BayBank would be estopped from asserting subsequently that the presentation was void because its failure to state that as a ground for dishonor would have lulled Shaanxi into assuming that the bank acknowledged that presentation was valid. See *Flagship Cruises, Ltd.* v. *New England Merchants Natl. Bank*, 569 F.2d 699, 703 (1st Cir. 1978).[7]

The presentation being valid, we consider the obligations of

_____

[6]The letter of credit also specifies that it is subject to the Uniform Customs and Practice for Documentary Credits of the International Chamber of Commerce, Publication No. 500 (1993 rev.) (UCP 500). Shaanxi notes that articles 14(d) and 14(e) of the UCP 500 impose requirements similar to the Uniform Commercial Code concerning the timely notification of the specific reasons for refusal of the documents. In all remaining respects the parties have treated the Uniform Commercial Code as controlling the particular issues presented here; we do likewise.

[7]The 1997 revision of the statute establishes an even stricter requirement that the issuer identify defects in the presentation. See G. L. c. 106, § 5-

BayBank in the unusual circumstances that existed. In doing so, we are mindful of the objectives underlying the use of letters of credit and the role that they play in ordering the affairs of parties to commercial transactions. "The very object of a letter of credit is to provide a near foolproof method of placing money in its beneficiary's hands when he complies with the terms contained in the letter itself . . . . Parties to a contract may use a letter of credit in order to make certain that contractual disputes wend their way toward resolution with money in the beneficiary's pocket rather than in the pocket of the contracting party." *Itek Corp.* v. *First Natl. Bank of Boston*, 730 F.2d 19, 24 (1st Cir. 1984). Permissible grounds for rejecting otherwise complying documents calling for payment under a letter of credit are few. The limited scope of defenses available to the issuer is reflected in the "narrowly circumscribe[d] . . . circumstances under which a court can enjoin the issuer from making such a payment." *Ground Air Transfer, Inc.* v. *Westates Airlines, Inc.*, 899 F.2d 1269, 1272 (1st Cir. 1990). Circumstances justifying nonpayment (and thus an injunction) generally require " 'fraud' so serious as to make it obviously pointless and unjust to permit the beneficiary to obtain the money." *Id.* at 1272-1273. There must be a showing that the beneficiary's conduct has been such that the legitimate purposes of enforcing the issuer's independent obligation will not be served. See *Roman Ceramics Corp.* v. *Peoples Natl. Bank*, 714 F.2d 1207, 1212 n.12, 1215 (3d Cir. 1983).

Commercial certainty calls for confidence on the part of the beneficiary of a letter of credit that, absent extraordinary circumstances, he will be paid upon presentation. The sole ground for nonpayment asserted by BayBank at the time of the second presentation was the restraining order (followed by the preliminary injunction). When the injunction was dissolved by virtue of the dismissal of TCI's complaint, no impediment to payment remained. This was true notwithstanding that the letter of credit had expired. See *Heritage Bank* v. *Redcom Labs., Inc.*, 250 F.3d 319, 328 (5th Cir. 2001). While the injunction may

---

108(c), precluding the issuer, with certain exceptions, from asserting as a basis for dishonor any discrepancy not stated in a timely notice without the beneficiary having a burden to demonstrate waiver or estoppel.

have postponed the bank's obligation to make payment, it did not extinguish the obligation, and failure to make payment upon dissolution of the injunction was a wrongful dishonor. See *Kelley* v. *First Westroads Bank*, 840 F.2d 554, 558 (8th Cir. 1988).

When, on February 26, 1997, TCI's action was dismissed and the restraint against payment of the letter of credit dissolved, it appears that neither Shaanxi nor BayBank was informed. Shaanxi did not learn of the event until the subsequent arbitration against TCI. We conclude from the docket of the Middlesex Superior Court that BayBank, not having appeared in the proceeding (though joined as a party and subjected to an injunction), received no notice of the dismissal. While Shaanxi could have been more aggressive in keeping track of events affecting its interests, the balance of the burden must be allocated to the bank. The bank was not a mere stakeholder. The bank committed itself, presumably for consideration, to its customer TCI, and the bank promised the intended beneficiary, Shaanxi, that payment would be available on proper demand. In these circumstances, it was incumbent on BayBank to inform itself of the status of the injunction so that, upon the injunction's dissolution, it could make the payment it had promised.[8]

Given that BayBank dishonored the letter of credit at the time of the dissolution of the injunction (or within a reasonable time thereafter), Shaanxi, under the then applicable limitations period, had six years in which to commence an action against the bank for wrongful dishonor. See *Century Fire & Marine Ins. Corp.* v. *Bank of New England-Bristol County, N.A.*, 405 Mass. 420, 421-422 (1989).[9] Shaanxi commenced this action on February 6, 2001, thereby satisfying the statute of limitations. We need not address whether this automatically eliminates the equitable defense of laches, see *Srebnick* v. *Lo-Law Transit Mgmt., Inc.*, 29 Mass. App. Ct. 45, 49-50 (1990), because the

[8]BayBank was not entitled to shift the burden back to Shaanxi to make a new presentation. A new presentation might well have been ineffective given that the letter of credit expired on October 31, 1996. In any event, for the reasons stated, the presentation dated October 18, 1996, received by the bank on October 24, 1996, was valid, and Shaanxi was not required to take further action.

[9]The statute of limitations is now one year. See G. L. c. 106, § 5-115, as inserted by St. 1997, c. 224, § 3.

bank's allegations that circumstances were such that it did not conduct its usual review of the presented documents, and that its collateral was jeopardized, are, if true, products of the bank's own choices and provide no basis for a laches defense. For the above-stated reasons, we conclude that summary judgment was properly entered in favor of Shaanxi on its claim for wrongful dishonor of the letter of credit.[10]

3. *Shaanxi's remaining claims.* We also agree with the motion judge that Shaanxi failed to present evidence sufficient to prevent summary judgment in favor of the defendants on Shaanxi's claims for misrepresentation and violation of G. L. c. 93A. Summary judgment is appropriate where there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. See Mass.R.Civ.P. 56(c), 365 Mass. 824 (1974). The moving party is entitled to summary judgment where "the party opposing the motion has no reasonable expectation of proving an essential element of that party's case." *Kourouvacilis* v. *General Motors Corp.*, 410 Mass. 706, 716 (1991).

To prevail on its claim of misrepresentation, Shaanxi was required to show that BayBank falsely represented a material fact with knowledge of its falsity for the purpose of inducing Shaanxi to act or refrain from acting, that Shaanxi reasonably relied on the representation, and that it incurred damage as a result. See *Barrett Assocs.* v. *Aronson*, 346 Mass. 150, 152 (1963). Shaanxi relies on two allegedly false statements by BayBank, i.e., that the temporary restraining order was in effect on October 28, 1996, when in fact it had expired on October 25, 1996; and that the subsequent preliminary injunction was a "permanent" injunction. While the first statement may have been technically inaccurate, the temporary restraining order having expired on October 25, 1996, and the preliminary injunction not being entered until October 28, 1996, there was no

---

[10]Our conclusion that Shaanxi was not bound by the temporary restraining order absent actual notice thereof, but that BayBank has an obligation to pay notwithstanding that it had no notice that the injunction had been dissolved is not, as the defendants suggest, based on an unfair double standard. Shaanxi was an involuntary defendant subjected to an unwelcome restraint. BayBank was a voluntary participant in a commercial transaction in which it assumed legal obligations.

showing either that BayBank knew the statement was false (given that restraints were in fact in place throughout the relevant period for all but three days), or that Shaanxi acted on it to its detriment (in light of the fact that it had already forwarded a second presentation). With respect to the bank's subsequent statement that the preliminary injunction was "permanent," this characterization, based on a statement by TCI's counsel, was accurate in the sense that the injunction would remain in place until the end of the litigation, or until further order of the court, and, unlike a temporary restraining order, would not be reconsidered within a brief period. Furthermore, BayBank could not have been found to have held itself out as prepared to provide legal advice to Shaanxi on the meaning of the injunction, a subject on which Shaanxi could easily have obtained counsel.[11]

Summary judgment was also properly entered on Shaanxi's claim under G. L. c. 93A. The claim is based in part on alleged false statements by BayBank. As set forth above, the alleged statements did not constitute actionable misrepresentations; neither do they sink to the level of an unfair trade practice. That BayBank wrongfully dishonored the letter of credit does not by itself constitute a c. 93A violation. To prevail under G. L. c. 93A, a plaintiff must show more than "a mere breach of a legal obligation under commercial law." *Framingham Auto Sales, Inc.* v. *Workers' Credit Union,* 41 Mass. App. Ct. 416, 418 (1996).

*Judgment affirmed.*

---

[11]Nor did BayBank breach any commitment to investigate. It stated only that it would inform Shaanxi in the event it (BayBank) received any further details. There was no evidence that it did in fact receive additional information.