Fishman, J.

INTRODUCTION

The plaintiff, Middlesex Bank & Trust Company (“Bank”), brings this action to obtain an injunction prohibiting it from honoring a demand for payment made pursuant to a standby letter of credit that it issued on behalf of the defendant Mark Equipment Corporation (“Mark”). This matter is before this Court on Mark’s Motion for Partial Summary Judgment on Count I of its counterclaim which alleges breach of contract by the Bank. After hearing, and upon review and consideration, Mark’s motion is DENIED for the following reasons.

BACKGROUND

The undisputed facts as revealed by the summary judgment record are as follows. On October 25, 2000, Mark and the defendant James Lichoulas (“Lichoulas”), a trustee of the Appleton Trust (“Trust”), entered into a contract pursuant to which Mark was to demolish certain buildings and structures owned by the Trust and located at 217 Jackson Street in Lowell, Massachusetts. In order to proceed with the demolition, the City of Lowell (“Ciiy”) required Mark and Lichoulas to obtain a permit. As a condition to the issuance of the permit, Mark was required to provide a bond or other means of securing performance of the contract. To satisfy this condition, Mark, the Trust, and the City entered into a “Tri-Party Agreement,” pursuant to which Mark and the Trust promised to obtain letters of credit naming the City as beneficiary for the amount of $200,000.
On December 6, 2000, pursuant to the terms of the Tri-Party Agreement, the Bank issued an Irrevocable Standby Letter of Credit, No. 101 (“First Letter of Credit”), naming the City as beneficiary, for the account of Mark, in an aggregate amount not to exceed $200,000. The expiration date of the First Letter of Credit was July 15, 2001. The First Letter of Credit contained the following provision:
Except as otherwise expressly stated herein, this letter of credit is subject to the International Standby Practices (“ISP98”) the International Chamber of Commerce, Publication No. 590, and shall, as to matters not governed by ISP98, be governed by and construed in accordance with the laws of the Commonwealth of Massachusetts.
To obtain payment under the letter of credit, the City was required to present a draft indicating the name of the issuing bank and the letter of credit number, at the Bank’s Newton office. The First Letter of Credit further required the City to present the following documents with the draft: an original copy of the First Letter of Credit and a statement/certificate (the “Certification”) on City letterhead signed by an authorized officer/representative of the City. The Certification was required to state the following:
The undersigned, being an authorized officer and/or representative of the City of Lowell (the “Municipality”), hereby certifies with regard to Mid-dlesex Bank & Trust Company Standby Letter of Credit No. 101, that the Municipality is authorized to draw upon said Letter of Credit pursuant to the terms of that certain Tri-Party Agreement (the “Agreement”) dated December 6, 2000 by and among the Municipality, James T. Lichoulas, Trustee of Appleton Trust (“Owner”), and Mark *123 Equipment Corp., a Massachusetts corporation (the “Contractor”), as the same has been amended, if at all, pursuant to the written agreement by and between all parties thereto, because (a) the Owner is entitled to terminate the Demolition Contract pursuant to the terms contained in Section 11.2 of the General Conditions of the Demolition Contract after any applicable notice and cure period (regardless of whether Owner elects to terminate the Demolition Contract), and (b) the Owner remains entitled to terminate the Demolition Contract pursuant to the said Section 11.2 after the Municipality has given Owner and Contractor five (5) additional business days’ prior written notice of its intent to draw upon the Letters of Credit (as defined in the Agreement).
Mark worked on the demolition project from November 1, 2000 until April 27, 2001, when the Massachusetts Department of Environmental Protection (“DEP”) ordered a work stoppage because asbestos-containing materials were discovered at the construction site. On or about June 20, 2001, the Trust sent Mark notice of its intent to terminate the demolition contract. On July 5, 2001, the City issued a notice of its intention to draw on the First Letter of Credit. Mark, in a seperate action filed in the Superior Court, sought to enjoin the City from drawing on the First Letter of Credit. On July 13, 2001, the Court (Lopez, J.) issued an Order which required, among other things, that the parties extend their letter of credit for 90 days. On July 15, 2001, the First Letter of Credit expired without presentment. On July 17, 2001, pursuant to Judge Lopez’s Order, the Bank issued a new Irrevocable Standby Letter of Credit, No. 101 (“New Letter of Credit”) in favor of the City. The New Letter of Credit was substantively identical to the First Letter of Credit. The New Letter of Credit had an expiration date of October 13, 2001.
On the morning of October 12, 2001, Mark informed the Bank that the City had not, to that date, provided written notice to Mark of its intention to draw upon the New Letter of Credit. Mark instructed the Bank to dishonor any presentment made pursuant to the New Letter of Credit by the City. Later that afternoon, the Cily made a presentment to the Bank, seeking to draw on the New Letter of Credit. The City submitted a document entitled “DRAFT,” which made specific reference to the letter of credit issued on July 17, 2001, and appropriately referenced the name of the issuing bank and the letter of credit number. Accompanying the draft was a signed letter from the City’s Chief Financial Officer which purported to be the Certification called for under the express terms of the New Letter of Credit. While the letter contained the specific language that was called for under the terms of the New Letter of Credit, the heading of the letter referenced an “Issuance Date" of “12/6/00" (the issuance date of the expired First Letter of Credit), rather than the July 11, 2001 issuance date of the New Letter of Credit.[2] The Bank refused to honor the draft presented by the City.
On October 17, 2001, the Bank filed this declaratory judgment action and requested that this Court enjoin it from either honoring or dishonoring the draft until the Court ruled on its motion for declaratory judgment. An October 23, 2001 Order of this Court (Neel, J.) denied the Bank’s Motion. In light of Judge Neel’s Court’s decision and the denial of injunctive relief, the Bank honored the draft and made payment to the City in the full amount of the New Letter of Credit. Mark now seeks partial summary judgment, alleging that the Bank breached its contract with Mark by honoring the City’s demand for payment.

DISCUSSION

This Court grants summary judgment where there are no genuine issues of material fact and the record entitles the moving party to judgment as a matter of law. See Mass.R.Civ.P. 56(c); Cassesso v. Commissioner of Correction, 390 Mass. 419, 422 (1983); Community National Bank v. Dawes, 369 Mass. 550, 553 (1976). The moving party bears the burden of establishing that there is no dispute of material fact on every relevant issue. See Pederson v. Time, Inc., 404 Mass. 14, 16-17 (1989). The moving party may satisfy this burden either by submitting affirmative evidence that negates an essential element of the opposing party’s case or by demonstrating that the opposing party has no reasonable expectation of proving an essential element of his case at trial. Flesner v. Technical Communications Corp., 410 Mass. 805, 809 (1991); Kourouvacilis v. General Motors Corp., 410 Mass. 706, 716 (1991).
The question for this Court is whether the Bank acted appropriately in honoring, the draft presented by the City. Both Mark and the Bank acknowledge that the New Letter of Credit is governed by the International Standby Practices 1998, the International Chamber of Commerce, Publication No. 590 (“ISP98”), by virtue of its incorporation into the terms of the New Letter of Credit. However, Mark contends that ISP98 requires the application of Massachusetts law for the ultimate decision of whether the Bank acted appropriately in honoring the draft.[3] The Bank claims that Mark’s interpretation of ISP98 is incorrect, and that the resolution of this issue can be reached by relying solely on the rules provided in ISP98.[4] While this case appears to present a matter of first impression in this jurisdiction relating to the interpretation of ISP98, this Court concludes that under both Massachusetts law and ISP98 practices, the Bank properly honored the draft presented by the City.[5]
ISP98 reflects generally accepted practice, custom, and usage of standby letters of credit. Rule 4 of ISP98 governs the duties and responsibilities an issuing bank must undertake when examining presentment documents. Pursuant to Rule 4.03, an issuing bank *124 “is required to examine documents for inconsistency with each other only to the extent provided in the standby.”[6] The effect of this rule is that each presented document need only comply with the requirements provided in the letter of credit. Furthermore, Rule 4 specifies that if exact or identical wording is desired in a presentment document, it must be expressly required in the letter of credit.[7]
In this case, the City presented to the Bank all of the specific documents required by the New Letter of Credit. In accordance with ISP98 Rule 4.03, the Bank was only required to examine the documents presented by the City to determine if they complied with the terms and conditions of the New Letter of Credit. The draft presented by the City contained all of the information specified in the New Letter of Credit. Both the name of the issuing bank and the letter of credit number were properly identified. The Certification, while incorrectly referencing the issuance date of the First Letter of Credit, contained the exact wording that was presented within the quotation marks and called for by the New Letter of Credit. The Bank was only required to examine the documents for inconsistency within this paragraph. Because the information that was required in the New Letter of Credit was contained in the presentment documents, the Bank correctly honored the draft.
As noted above, Mark does not contest that the ISP98 governed the New Letter of Credit. Rather, Mark relies on Rule 4.01(b) which provides: “whether a •presentation appears to comply is determined by examining the presentation on its face against the terms and conditions stated in the standby as interpreted and supplemented by these Rules which are to be read in the context of standard standby practice.” (Emphasis added.) Through the application of Rule 4.01(b), Mark maintains that Massachusetts law should apply to determine whether the Bank complied with “standard standby practice.”
Assuming, without deciding, that Mark’s interpretation of ISP98 is correct, this Court finds that Massachusetts law also supports the Bank’s decision to honor the draft. Under Massachusetts law, letters of credit are governed by G.L.c. 106, §5. Section 5-108 provides in relevant part:
Except as otherwise provided in Section 5-109, an issuer shall honor a presentation that, as determined by the standard practice referred to in subsection (e), appears on its face strictly to comply with the terms and conditions of the letter of credit. Except as otherwise provided in section 5-113 and unless otherwise agreed with the applicant, an issuer shall dishonor a presentation that does not appear to comply.
G.L.c. 106, §5-108(a). The official comment to section 5-108 provides that identifying and determining compliance with standard practice are matters for the court. See Comment 1, G.L.c. 106, §5-108.
Massachusetts requires that a demand for payment comply strictly with the terms of a letter of credit. Boston Hides & Furs, Ltd v. Sumitomo Bank Ltd., 870 F.Sup. 1153, 1159 (D.Mass. 1994), citing Exotic Traders Far East Buying Office v. Exotic Trading USA., Inc., 717 F.Sup. 14, 16 (D.Mass. 1989). Documents submitted incident to a letter of credit are also subject to the principle of strict compliance. Banco Espanol de Credito v. State Street Bank & Trust Co., 385 F.2d 230, 234 (1st Cir. 1967). “Accordingly, where presentment documents are not exactly as specified in the letter of credit, demand may be rejected.” Boston Hides & Furs, Ltd., 870 F.Sup. at 1160.
The strict compliance rule, however, is not absolute, as a bank may “not reject a demand for payment on the basis of hypertechnical reading of a letter of credit.” Exotic Traders Far East Buying Office, 717 F.Sup. at 16. Rather, “a variance between documents specified and documents submitted is not fatal if there is no possibility that the documents could mislead the paying bank to its detriment.” Flagship Cruises, Ltd v. New England Merchants Nat. Bank of Boston, 569 F.2d 699, 705 (1st Cir. 1978); Boston Hides & Furs, Ltd., 870 F.Sup. at 1160.
The parties do not dispute that the heading of the Certification referenced the issuance date of the expired letter of credit, and not the New Letter of Credit which the City sought to draw upon. Instead, Mark claims that the Bank was required to dishonor payment because the Certification was defective on its face. This Court finds that the reference in the Certification to the expired letter of credit is a “technical variance” regarding a matter that was not required under the terms of the New Letter of Credit and which could not mislead the Bank to its detriment. See Boston Hides & Furs, Ltd., 870 F.Sup. at 1160.
This conclusion is based on the following factors. First, the City submitted all the documents that were required by the New Letter of Credit. Second, the Certification, which contained the reference to the expired letter of credit, otherwise complied with the terms of the New Letter of Credit. Third, the language in the Certification also referenced the issuance date of the expired letter of credit. Fourth, the New Letter of Credit did not even require the Certification to reference the issuance date of the letter of credit. Because the City’s presentment would have been acceptable absent the reference to the issuance date of the expired letter of credit, this Court cannot conclude that the Bank was required to dishonor payment. See Boston Hides & Furs, Ltd., 870 F.Sup. at 1161. Rather, it is clear that the mere reference to the date of the expired letter of credit could not possibly have caused the documents to mislead the Bank to its detriment.
Therefore, the Bank’s decision to honor the draft presented by the City was proper under both the rules of ISP98 and the laws of Massachusetts.
*125 ORDER
For the foregoing reasons, it is hereby ORDERED that Mark Equipment Corporation’s Motion for Partial Summary Judgment is DENIED.

The heading on the Certification reads as follows:
Re: Irrevocable Standby Letter of Credit No. 101 Regarding Appleton Mills demolition contract (the “Demolition Contract”) by and between Mark Equipment Corporation and James T. Lichoulas, Trustee of Appleton Trust
Applicant/Accountee/Owner: Mark Equipment Corporation
Issuance Date: 12/6/00
Credit Amount: USD $200,000.00.

Massachusetts state and federal courts have consistently looked to state law to determine whether a bank was justified in refusing to pay under a letter of credit that was subject to other mies establishing uniform practices in such matters. See, e.g., Shaanxi Jinshan TCI Electronics Corp. v. FleetBoston Financial Corp., 61 Mass.App.Ct. 41, 45 n.6 (2004) (relating to the Uniform Customs and Practice for Documentary Credits (1993 Revision), International Chamber of Commerce Publication Number 500). See Boston Hides & Furs, Ltd v. Sumitomo Bank Ltd., 870F.Sup. 1153, 1158 (D.Mass. 1994), relating to the Uniform Customs and Practice for Documentary Credits (1983 Revision), International Chamber of Commerce Publication Number 400); Mueller Co. v. South Shore Bank, 991 F.2d 14, 16 (lstCir. 1993) (same).

The Bank argues that Judge Neel’s October 23, 2001 Order conclusively decided the issue of whether the City complied with the terms and conditions of the New Letter of Credit, and, therefore, pursuant to the law of the case doctrine, the Bank is entitled to summary judgment. The Bank’s argument in this regard is without merit. In denying the Bank’s application for a preliminary injunction, Judge Neel’s Order concluded that the Ciiy had “at least a colorable claim that its certification to the Bank” was in accordance with the requirements of the New Letter of Credit. Determining that a party has a colorable claim is not tantamount to reaching a final decision in the case.

In a previous decision in this case, entered on July 8, 2002, and denying the Bank’s motions to dismiss the Counterclaims of the Ciiy and Lichoulas (who are no longer parties to this action), this Court (Bohn, J.) determined that “the laws of the Commonwealth are controlling,” and that “[blecause the ISP98 and the letter of credit state that ISP98 supplements, rather than supplants the laws of the Commonwealth, this Court will apply both.”

See Michael Evan Avidon, Getting Ready for ISP98 — The International Standby Practices, Corporate Counsel Magazine, December 1998 (commenting that presentment documents need only comply with the requirements provided in the letter of credit): James B. Byrne, Why the ISP Should be Used for Standbys, Documentary Credit World, January 2000, Volume 4, Number 1 (observing that the ISP98 “"eliminates the requirements that documents must be consistent with each other and requires the issuer to specify any consistency that is required so that the beneficiary is on notice”).

ISP98 Rule 4.09 Identical Wording & Quotation Marks, provides in relevant part: “[i]f a standby requires . . . (b) specified wording by the usage of quotation marks, blocked wording, or an attached exhibit or form, then typographical errors in spelling, punctuation, spacing, or the like that are apparent when read in the context are not required to be duplicated and blank lines or spaces for data may be completed in any manner not inconsistent with the standby: or (c) specified wording by the use of quotation marks, blocked wording, or an attached exhibit or the documents presented, including typographical errors in spelling, punctuation, spacing and the like, as well as blank lines and spaces for data, must be exactly reproduced.”